[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
John M. Kozenieski is the developer of a subdivision in Southbury known as Overton Farm Estates. There are nine lots in the subdivision and eight of these abut Overton Farm Drive. Lot 4 is an interior lot and access to and from the Drive is through an easement of way over a portion of Lot 3. Lot 5 abuts this easement but has no rights as to it. Lot 5 also abuts Lot 4. In a map prepared in connection with the application for subdivision approval, proposed house locations are indicated. The only purpose of that was to demonstrate that it was feasible to construct homes on the various lots.
Prior to the sale of any lots, Kozenieski executed and caused to be recorded on the land records a Declaration of Restrictions, the pertinent portions of which are:
"WHEREAS, JOHN M. KOZENIESKI, of Quanopaug Trail, Woodbury, Connecticut, (hereinafter called "OWNER"), in order to promote the orderly development of the residential character of the subdivision known as `Overton Farms Estates,' desires to impose the following covenants, conditions and restrictions for the benefit of the Owner, his heirs and assigns, as well as for the benefit of the grantees of any and all lots in the `Overton Farms Estates' Subdivision . . .
 1. No building or structure of any kind shall be erected or altered upon any lot, except in conformity with plans, elevations and specifications for the exterior of said structure and the location thereof which have been approved in writing and initialled on each and every page by Owner, or his designated representative, prior to submission of such plans to the Building Department or other authority for a building permit. Said plans, elevations and specifications shall include the type of materials and color on all exterior surfaces. Any dwelling house shall contain at least 3,000 square feet of living area. In the event that the Building Department requires any alteration to the plans and specifications approved by the Owner, said alteration will be submitted to the Owner and must be approved by the Owner prior to commencement of any construction. In determining whether or not to approve the plans and specifications, the Owner, his designated agent or representative, shall consider, CT Page 875 whether such plans are in conformity and harmony with external design and general quality of the existing and/or proposed standards of the neighborhood, including consideration of the suitability of the proposed structure, the materials of which it is to be built, the specific location of the site upon which it is to be erected, the effect of the structure as planned on the outlook from the adjacent or neighboring property and such other factors as may be consistent with the purposes of the restrictions herein contained. Raised ranch and split-level style homes shall not be approved.
 22. OWNER shall have the right to enforce any of the foregoing covenants and restrictions and he hereby grants the same right to enforce the foregoing covenants and restrictions to any and all persons who may own or may hereafter own property within the premises. He shall not be held liable to any lot owners for any damages recovered by him as a result of a proceeding either at law or equity against a violator of any declaration or covenant contained herein."
The plaintiff purchased Lot 4 and in the deed to her the conveyance is expressly made subject to the restrictions. She built a house on that lot which is sited a significant distance from the location shown on the map submitted for subdivision approval. The front of the house faces Overton Farm Drive and overlooks Lot 5. Lot 5 is at a somewhat higher elevation than Lot 4 and in fact a portion of it is the highest part of the subdivision.
Subsequently, the defendants Donna and Henrietta Recko purchased Lot 5 and their deed is also expressly subject to the restrictions. They submitted to Kozenieski construction plans and a proposed site location which also varied from the location indicated on the original subdivision plan. The most significant difference is that the front of the house, and therefore its longest axis, faced Overton Farm Drive rather than the easement over Lot 3. Accordingly, the long axis is parallel to the long axis of the plaintiff's house and the rear of the Recko house faces the front of the Genthe house. The Genthe house is set back 84 feet from the boundary with Lot 5 and the closest part of the Recko house is approximately 77 feet from that boundary so that the two are separated by about 160 feet. Admittedly, the original house plan did not conform to the restrictions in that it contained somewhat less than 3,000 square feet. Nevertheless, Kozenieski approved the plan and site location but I find as a fact that he did so on the understanding that the house plan would be modified. It was in fact modified so as to come to more than 3,000 square feet of living area, which included a CT Page 876 screened porch. Despite the argument of Genthe that the porch should not be counted, I see no reason to hold that a screened porch is not "living area". The revised plan was also given the requisite approval.
Admittedly siting the long axis of the Recko house substantially parallel to the long axis of the Genthe house does interfere more with the view of Overton Farm Drive than would have been the case if the long axis faced the easement. In this action, the plaintiff seeks to enjoin further construction of the Recko house and also to require it be turned approximately 90 degree, and also damages for the alleged diminution in the value of her home by reason of the restriction on her view and the fact that the front of her house faces the rear of the Recko house. It is her claim that Kozenieski did not consider the impact of the siting upon her as required by the restrictions.
The restrictions required Kozenieski to consider impact on the entire subdivision. It is obvious that he did so for he said in so many words before approving the siting that to have the long axis of the Recko house parallel to the easement and perpendicular to Overton Farm Drive would be to create a "white elephant". Furthermore, the siting of the Recko house with the front facing the Drive is consistent with all of the other houses that have been constructed in the subdivision. He certainly was not only entitled to but mandated to take into consideration the overall impact and if that had an adverse effect on one lot while being beneficial to the other eight, so be it. I find that he did in fact comply with the mandates of the restrictions.
In any event, the Reckos did exactly what the restrictions required and they obtained his approval of the house and siting plans. To require them to go beyond that would impose an intolerable burden because it would mean that despite obtaining approval, anyone building in the subdivision would do so at their peril.
The Reckos have counterclaimed against Genthe seeking injunctive relief because they allege she erected a mailbox on their land and constantly trespasses to pick up her mail. The evidence was in conflict as to whether the mailbox is on Recko's land or town property. They further seek to enjoin the violation of the restrictions in keeping ungaraged tractors and trailers on the premises. I conclude that although this has happened, it was so occasional as not to warrant the extreme remedy of an injunction. Finally, they seek a mandatory injunction because the plaintiff missed a deadline for submitting a proposed landscape design. The time involved is so short as not to warrant injunctive relief.
Judgment may enter for the defendants on the complaint and for the plaintiff on the counterclaim. CT Page 877
J. HEALEY STATE TRIAL REFEREE